UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOUIS ANTHONY WILBON,

        Plaintiff,                   Case No: 13-14404
                                     Honorable Victoria A. Roberts

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

        Defendants.
_____/

**ORDER:**

**(1)    GRANTING WARDEN KLEE'S MOTION FOR SUMMARY JUDGMENT;**

**(2)    GRANTING MICHIGAN DEPARTMENT OF CORRECTIONS MOTION TO DISMISS; AND**

**(3)    DENYING WILBON'S RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**I.    Introduction**

Louis Anthony Wilbon ("Wilbon") contracted an infection known as MRSA while incarcerated at Gus Harrison Correctional Facility ("Gus Harrison"). In his lawsuit, Wilbon links his illness to civil rights violations by various defendants and brings convoluted claims under 42 U.S.C. §1983 ("§1983") and the American's with Disabilities Act ("ADA").

A serious deficiency in Wilbon's complaint is that although he references the ADA in a preamble to his statement of claims, he does nothing to address the elements of such a claim in his factual allegations.

1

2:13-cv-14404-VAR-PJK    Doc # 93    Filed 03/06/15    Pg 2 of 23    Pg ID 898

Two motions are before the Court: (1) Michigan Department of Corrections' Motion to Dismiss; and (2) Klee's Motion for Summary Judgment. The Court addresses an additional issue: Wilbon's renewed Motion for Temporary Restraining Order and Preliminary Injunction.

For reasons discussed below:

1.    Michigan Department of Corrections' Motion to Dismiss is **GRANTED**.

2.    Klee's Motion for Summary Judgment is **GRANTED**.

3.    Wilbon's renewed motion for Temporary Restraining Order and Preliminary Injunction is **DENIED**.

## II.    Background

### A.    Nature of the Action

Wilbon is a prisoner acting *pro se*. He filed a civil rights complaint against various prison officials under §1983 and the ADA. Both causes of action are not brought against all defendants. Wilbon describes himself as disabled and says he is wheelchair dependent, legally blind, and partially deaf. Seven of the eleven defendants are unidentified. Wilbon's complaint makes it difficult to distinguish which claims are against which defendants. The allegations against each defendant are equally muddled.

### B.    Factual Background

On April 29, 2011, Wilbon was transferred from the Michigan Department of Correction's Duane Waters Hospital to Gus Harrison Correctional Facility ("Gus Harrison") for the purpose of participating in the Michigan Prisoner Reentry Program. Wilbon says on the day he arrived at Gus Harrison, a prisoner infected with Methicillin-

2

Resistant Staphylococcus Aureus ("MRSA") was removed from a cell and placed in isolation.  Wilbon says he was placed in this same bunk; neither the cell nor bunk was sanitized.

Between May 6, 2011, and July 18, 2011, Wilbon received medical attention on several occasions.   He was seen by a nurse he refers to as "Jane Doe, RN."  She referred Wilbon to Dr. Anil Prassad who made the diagnosis.  MRSA is a "staph" germ that does not respond to antibiotics designed to cure staph infections.  *See*, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0004520/ (last visited Feb. 24, 2015). MRSA can occur in healthy individuals but it is more common with those who have a weakened immune system.  *Id.*  MRSA can be spread through skin-to-skin contact.  *Id.* A sign of infection is a red, swollen and potentially painful area.  *Id.*  It may look like a boil and it may contain pus or other fluids.  *Id.*

Wilbon says both Jane Doe, RN and Dr. Prassad confirmed a previous prisoner had MRSA and that Wilbon was now in the same cell and bunk.  Wilbon returned to that cell and bunk after treatment.

Wilbon also saw Jane Doe, Physician Assistant, for an MRSA abscess.  The complaint says she ordered dressing changes three times a week and prescribed an antibiotic.  The complaint alleges she confirmed Wilbon resided in the same cell and bunk as another infected prisoner.  On July 3, 2011, Jane Doe, RN discovered a "pimple" on Wilbon's back near the previous MRSA infection.  Two days later she ordered more dressing changes.  Wilbon does not say whether this "pimple" was related to MRSA.

Wilbon continued to see Dr. Prassad for new signs of MRSA.  Dr. Prassad

3

ordered a short round of antibiotics and more dressing changes.

Finally, On July 18, 2011, Wilbon saw Jane Doe, RN for shin dressing changes. Wilbon says the purpose of these dressing changes was to prevent bleeding and spread of the MRSA infection.

Wilbon was paroled on October 5, 2011.  He thought his MRSA was cured. However, four months later – on March 1, 2012 – Wilbon lost consciousness and was brought by ambulance to the emergency room.  Wilbon says within three hours of his arrival at the hospital, he had to be resuscitated four times before being placed on life support.  Wilbon says he remained at Spectrum Hospital on life support with "pick-lines, feeding tubes, and a trak-in-throat" until May.  Wilbon says he suffered severe physical and emotional distress.  He says the doctor diagnosed MRSA as the cause of his medical condition.  In May, Wilbon was transferred to Heartland Inter-med Rehabilitation Center where he remained until December.  During this time he returned to Spectrum Hospital twice for blood transfusions.  Over the next few months Wilbon was released, hospitalized again, and eventually began rehabilitation at Metron of Forest Hills.  He remained there until his parole was revoked on April 10, 2013.

Upon return to MDOC, Wilbon was immediately transferred to Duane Water Health Center because of his medical condition.  In May 2013, Wilbon was transferred to Parnall Correctional Facility in Jackson, Michigan.  Wilbon now resides at the Central Michigan Correctional Facility in St. Louis, Michigan.

## III.   Procedural History

On November 19, 2003, Wilbon's complaint was dismissed under the "three strikes rule" under 28 U.S.C. §1915(g) because he did not pay the filing fee for his

4

complaint.  Three of Wilbon's prior complaints were dismissed for failure to state a claim and Wilbon did not appear to be in "imminent danger of serious physical injury," a statutory exception to the three strikes rule, which – if substantiated – would have allowed his complaint.  Wilbon filed a motion for reconsideration and provided additional factual support for his contention that he was in danger of serious physical injury.  In light of the more specific allegations, the Court found it could be inferred that Wilbon was in danger of serious physical harm.  On February 24, 2014, the Court granted Wilbon's Motion for Reconsideration; vacated the order and judgment of dismissal; directed the clerk to re-open the case; granted Wilbon's application to proceed without prepayment of fees and costs; and, directed service of the complaint on the defendants.

On March 12, 2014, Wilbon filed a Motion for a Temporary Restraining Order ("TRO") and a Preliminary Injunction.  He also filed a Motion to Appoint Counsel and a Motion to Provide Additional Information.  The Court denied Wilbon's Motion for a TRO and Preliminary Injunction; granted his Motion for Appointment of Counsel; granted his Motion to Provide Additional Information; and, directed the Clerk to correct the docket to reflect the correct name of defendant Corizon Health, Inc. ("Corizon").

Corizon answered; Klee filed a Motion for Summary Judgment; MDOC filed a Motion to Dismiss.

The Court stayed the case because Wilbon requested an attorney.  While the case was stayed, Wilbon filed a Motion for Leave to File Amended Complaint and Supplemental Pleading.  On June 11, 2014, the Court lifted the Order staying the case because efforts to obtain counsel for Wilbon were unsuccessful.  The Court allowed Wilbon to amend his response to both the Motion for Summary Judgment and the

5

Motion to Dismiss.

## IV.    Discussion

### A.    MDOC's Motion to Dismiss

Paragraphs 41-44 of the complaint purportedly allege an Eighth Amendment claim against the Michigan Department of Corrections ("MDOC") based on Wilbon's placement in a contaminated cell and insufficient medical care.  Wilbon's ADA claim is this: an Eighth Amendment violation amounts to a violation of the ADA.  Wilbon says the ADA allows for a private cause of action against defendants for cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.

MDOC says Wilbon's suit against it should be dismissed because it is immune from suit under §1983 and because Wilbon fails to state a claim under Title II of the American's with Disabilities Act ("ADA").  In his response to MDOC's motion, Wilbon clarifies that he is not suing the MDOC under §1983.

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  This standard does not

6

"impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.  Dismissal under Rule 12(b)(6) is warranted "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief." *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008).

Because a motion to dismiss challenges the sufficiency of the pleadings, "[i]t is not the function of the court [in ruling on such a motion] to weigh evidence." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).  Rather, to determine whether the plaintiff sets forth a "plausible" claim, the Court "must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994).  However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  In deciding a motion to dismiss, the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

### 1.    Matters outside the Pleadings

Wilbon attaches an affidavit to his response titled "In Support of Being a Disabled American Citizen."   MDOC does not address the affidavit in its reply.

7

When affidavits are filed the court must proceed under Fed.R.Civ.P 56 unless the court decides to exclude them. *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 392 (6th Cir. 1975). The Sixth Circuit takes a liberal view of what falls within the pleadings under 12(b)(6). Documents attached to a motion to dismiss form part of the pleadings when they are referred to in the complaint and are central to the claim. *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001). If the new materials merely "fill in the contours and details" of the complaint and add nothing new they may be considered without converting the motion to one for summary judgment. *Id.* (Citation omitted).

Wilbon's affidavit adds new factual allegations not referred to in the complaint. In its discretion, the Court excludes the affidavit and decides the motion to dismiss based on the sufficiency of the complaint.

## 2.    Title II of the ADA

Wilbon says he suffers from the following disabilities: wheelchair dependent, legally blind, and partially deaf. Nonetheless, MDOC says Wilbon fails to establish the elements of an ADA claim. The Court agrees.

MDOC says Wilbon fails to allege or imply that he was excluded or discriminated against "solely" because of his disability. MDOC is correct that Wilbon must allege causation between the alleged discrimination and his disability. However, use of the "sole-cause" standard is in doubt in light of *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 314 (6th Cir. 2012) (overruling circuit precedent requiring a Title I ADA claimant to prove discrimination was the "sole" reason for the adverse decision and replacing it with a "but for" test that more closely adheres to statutory language).

8

MDOC relies on *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005) which says in order to state a claim under the ADA, a plaintiff must establish: (1) he has a disability; (2) he is otherwise qualified; and (3) he is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of his disability. *Dillery* involved a disabled woman who alleged a violation of Title II of the ADA because the city failed to install proper curb cuts forcing her to ride her wheelchair in the street. *Id.* at 565. The court held police involvement did not constitute intentional discrimination under the ADA because they were motivated by citizen complaints about being in the road, and were not discriminating against her "solely" because of her disability. *Id.* at 568.

Regardless of the causation test applied, this complaint fails to supply a link between the alleged discrimination and Wilbon's disability. But this is just one reason Wilbon fails to state a claim; in addition to the failure to address causation, Wilbon's complaint does not set forth sufficient facts to satisfy other necessary elements of an ADA claim.

The complaint alleges discrimination based on Wilbon's placement in a contaminated cell. However, the provision of a place to sleep is not a "program" or "activity" under 42 U.S.C. §12132. *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996). *Bryant* involved a slightly different situation yet it is instructive. The plaintiff, a paraplegic, claimed defendants violated the ADA and the Eighth Amendment by failing to provide guardrails for his bed and for failing to provide pain medication. *Id.* The Seventh Circuit reasoned that plaintiff failed to allege discrimination that he was treated worse than other inmates. *Id.* Instead, the court found he was complaining of

9

"incompetent treatment" of his paraplegia.  Importantly, the court also concluded that "[s]leeping in one's cell is not a 'program' or 'activity.'"  *Id.*

District courts rely on *Bryant* for the proposition that a prisoner pursuing an ADA claim based on exclusion from a"prison service, program, or activity" or of discrimination because of his disability, cannot rely solely on incompetent treatment for medical problems and expect to prevail under the ADA.  See, *Stevenson v. Pramstaller*, No. 07-14040, 2008 WL 5085145, at *3 (E.D. Mich. Oct. 2, 2008) report and recommendation adopted, No. 07-14040, 2009 WL 804748 (E.D. Mich. Mar. 24, 2009) (granting defendants' motion for summary judgment on ADA claim because state prisoner alleging incompetent medical treatment is not complaining of being excluded from a prison service, program or activity, or of discrimination based on his disability).

In sum, the complaint does not allege sufficient facts regarding: (1) discrimination; (2) denial of the benefits of a "service, program, or activity;" or (3) provide a link between any alleged denial and his disability.  Although *pro se* pleadings must be liberally construed, they must also satisfy basic pleading requirements.  ". . . [L]iberal construction does not require a court to conjure allegations on a litigant's behalf."  *Wright v. J & S Extradition Servs., LLC*, No. 11-0464, 2012 WL 1078981, at *6 (M.D. Tenn. Mar. 30, 2012).

Wilbon believes discovery of his medical records and MDOC records of other infected prisoners will show he was treated differently than other inmates.  However, Wilbon has not alleged enough to raise a reasonable expectation that discovery will reveal evidence of illegal conduct.  A threadbare recital of the elements of a claim that is supported only by conclusory statements is insufficient.  *Ashcroft v. Iqbal*, 556 U.S. at

10

678.  Wilbon fails to even make a threadbare recital of the elements.  Wilbon says he was placed in a contaminated cell and that this action violates the ADA.  This is insufficient to survive a motion to dismiss.

 In his response, Wilbon mentions for the first time that MDOC continued to not sanitize his cell despite Wilbon's subsequent infections.  The complaint does not mention this – it alleges illegal conduct based on Wilbon's original placement in the allegedly contaminated cell and insufficient medical care.  Wilbon goes on to say in his response, that "defendants" "refused to move him, quarantine him, or to aid or assist him, or to supply . . . necessary sanitation materials."

Wilbon cannot bolster his complaint by bringing in new facts in his response to a motion to dismiss. Even taking these allegations as true; Wilbon received treatment for MRSA on multiple occasions and the failure to move him, place him in quarantine, and sanitize relates to the degree of treatment he received – not denial of benefits based on disability.

Judge Posner addressed the link between medical care and an ADA claim which Wilbon attempts to make here.   In *Bryant*, Judge Posner noted that standards of medical care are not irrelevant under the statute; disabled individuals often can't participate in programs and activities unless they are provided with special attention to their medical needs.  *Bryant*, 84 F.3d at 249.  However, Judge Posner said, "[t]he ADA does not create a remedy for medical malpractice."  *Id*.  Additionally:

> Even apart from the prison setting it would be extremely odd to suppose that disabled persons whose disability is treated negligently have a federal malpractice claim by virtue of the Americans With Disabilities Act, whereas a sick or injured but not disabled person—a person suffering from an acute viral infection, perhaps, or who has broken his leg, or who has a

11

> hernia or an inflamed gall bladder—must be content with the remedy that
> the state law of medical malpractice provides.

*Bryant v. Madigan*, 84 F.3d at 249.  Wilbon may be correct that more could have been

done to prevent subsequent infections.  But that does mean he can transform a claim

for alleged substandard medical care into an ADA violation. The complaint simply does

not set forth allegations supporting discrimination.  Nor is there the necessary link

between an act or omission and his disability.

Wilbon says a plaintiff with an arguable claim should be allowed to amend the

complaint before a pending motion to dismiss is ruled on.  Wilbon also says a motion to

dismiss is not a responsive pleading under rule 15(a)(1)(A) and he should be granted

leave to amend his complaint before the Court dismisses his ADA claim.

Wilbon's motion to amend is pending before the Court.  The Court addresses this

issue in consideration of that motion (see, Order Denying Plaintiff's Motion to Filed

Amended Complaint and Supplemental Pleading; Corizon's Motion to Compel is Moot,

filed March 6, 2015).

### 3.      §1915 and 12(b)(6)

Wilbon says MDOC's motion to dismiss should be denied because the Court

granted his motion for reconsideration and ordered service of the complaint on the

defendants. Wilbon is wrong.  In granting Wilbon's Motion for Reconsideration under

§1915, the Court merely ordered service on the defendants.  Nothing more.  "...an

indigent plaintiff who states an arguable claim is entitled to service of process even

when it appears that he ultimately may not be entitled to relief."  *Gibbs v. Norman*, 898

F.2d 153, 1990 WL 25805, at *2 (6th Cir.1990).

When the Court granted Wilbon's motion for reconsideration it did not examine the merits of the underlying claims, but focused on whether Wilbon established the statutory exception of imminent danger.

A claim that survives review under 28 U.S.C. §1915 does not automatically survive a 12(b)(6) motion.  Under §1915(e)(2)(B)(i) and (ii), a court can dismiss a case if it determines the action is (1) frivolous or malicious; or (2) fails to state a claim on which relief may be granted.  A complaint may be dismissed  "...if it relies on a claimed legal interest which clearly does not exist or on a factual scenario that is fantastic or delusional." *Gibbs v. Norman*, 1990 WL 25805, at *2.  The Court can properly consider the 12(b)(6) motion before it.

MDOC's Motion to Dismiss is **GRANTED**.

**B.     Warden Klee's Motion for Summary Judgment**

Paul Klee ("Klee") is the Warden at the Gus Harrison Correctional Facility. Wilbon's §1983 claim against Klee alleges deliberate indifference to his health and safety in violation of the Eighth and Fourteenth Amendments.  Wilbon's claim against Klee is that he violated the constitution by placing him in a contaminated cell.  Wilbon also alleges an ADA violation against all defendants, including Klee.

Klee says he is entitled to qualified immunity because he was not personally involved in any alleged constitutional violation.  Klee also says Title II of the ADA does not allow suit against public officials acting in their individual capacity.

**1.     Standard of Review**

Summary judgment must be granted "if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law."

13

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). A fact is material if it could affect the outcome of the case based on the governing substantive law. *Id.* at 248. A dispute about a material fact is genuine if on review of the evidence, a reasonable jury could find in favor of the nonmoving party. *Id.*

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. Summary judgment is appropriate if the party with the burden of proof at trial fails to establish the existence of an element that is essential to that party's case. *Muncie Power Products, Inc. v. United Technologies Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252. Conclusory allegations are insufficient to create a genuine issue of material fact. *Johari v. Big Easy Restaurants, Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).

When reviewing a summary judgment motion, the court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). "The Court need consider only the cited materials, but it may consider other materials in the record." Fed.R.Civ.P. 56(c)(3). The Court's function at this stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249.

14

## 2.      §1983 and Qualified Immunity

To survive Klee's summary judgment motion, Wilbon must demonstrate there is a genuine issue of material fact on two elements: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was caused by someone acting under color of state law.  *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005).

There is no dispute Klee acted under color of state law during the relevant time period; the question is whether he deprived Wilbon of a right secured by federal law.

Klee pleads qualified immunity as an affirmative defense; the burden is on Wilbon to prove Klee is not entitled to immunity.  *Moldowan v. City of Warren*, 578 F.3d 351, 375 (2009).

In resolving a qualified immunity claim, the Court examines: (1) whether the facts alleged demonstrate a constitutional violation; and (2) whether the right at issue was "so clearly established at the time of the conduct 'that every reasonable official would have understood that what he was doing violated that right.'"  *T.S. v. Doe,* 742 F.3d 632, 635 (6th Cir. 2014) citing *Ashcroft v. al–Kidd*, 131 S.Ct. 2074, 2083 (2011).  In its discretion, the Court can decide which prong to evaluate first.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Wilbon's allegations against Klee fail to allege a constitutional violation; he cannot show his placement in the contaminated cell amounted to cruel and unusual punishment.

The Eighth Amendment forbids "prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with 'deliberate indifference'. . ."  *Stoudemire v.*

15

*Michigan Dep't of Corr.*, No. 07-15387, 2014 WL 1976884, at *4 (E.D. Mich. May 15, 2014) (citation omitted).  The deliberate indifference standard applies to a prisoner's challenge to conditions of confinement.  *Wilson v. Seiter*, 501 U.S. 294, 303 (1991).  In the context of "conditions of confinement" cases, the Eighth Amendment imposes a duty on prison officials to ensure inmates receive "adequate food, clothing, shelter, and medical care" as well as reasonable measures to guarantee safety.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

A deliberate indifference claim under the Eighth Amendment has both objective and subjective components.  *Farmer v. Brennan*, 511 U.S. at 834.  The objective component requires the existence of a sufficiently serious medical need, such as being incarcerated under conditions that pose a substantial risk of serious harm.  *Id.*  "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)(citation omitted).

An MRSA infection can be an objectively serious medical condition.  *Nelson v. Putnam Cnty. Justice Ctr.*, No. 13-00029, 2013 WL 1623686, at *3 (M.D. Tenn. Apr. 15, 2013).  In *Nelson*, the court found the facts supported a finding that even a lay person would recognize the need for a doctor's attention.  *Id.*  The plaintiff in *Nelson* alleged he was only taken to the E.R. after a court order – a fact which supported deliberate indifference.  Additionally, the plaintiff said he was given only ibuprofen for extreme pain.  *Id.*  Plaintiff also said the treatment he received at the jail was inadequate because his injury was not dressed or drained appropriately nor was he provided with

16

the right antibiotics or pain medications.  *Id.*   The court found that the allegations in the complaint were sufficient to state a claim for deliberate indifference as to unidentified individual medical staff members and to survive initial review.  *Id.*

The Court concludes that Wilbon meets the objective component of a deliberate indifference claim; he alleges he was placed in an infected bunk and contracted MRSA, leading to "open wounds, bleeding, scars, and serious life threatening injuries."  These allegations satisfy the sufficiently serious medical need component.

But Wilbon cannot meet the subjective component.   This requires he show that Klee had "a sufficiently culpable state of mind. . ." in placing him in a contaminated cell.  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004).  Deliberate indifference requires more than "mere negligence" but can be satisfied "...by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Farmer v. Brennan*, 511 U.S. at 835.  A prison official cannot be liable for denying an inmate humane conditions of confinement "...unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

Wilbon says summary judgment is inappropriate because Klee is generally responsible for the protection of inmates from infectious disease and policy and procedures were not being applied.  Wilbon also says Klee admitted he was informed of Wilbon's diagnosis and that his wounds were being contained with bandages.  Wilbon says it can also be inferred that: (1) Klee was notified on at least four other occasions that Wilbon was diagnosed with MRSA; (2) Wilbon was at serious risk of his health and

17

safety; (3) policy and procedures for control and sanitization were not being applied or followed.

In his complaint, Wilbon focuses his allegations against Klee on his placement in a contaminated bunk.  In his motion, Wilbon attempts to broaden his constitutional claim against Klee by adding the argument of inadequate medical care.  In general, a plaintiff may not raise a new legal claim for the first time in response to a motion for summary judgment.  *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005).   The Court declines to liberally construe Wilbon's complaint so as to encompass a claim against Klee for inadequate medical care.  Wilbon proffers no evidence that Klee was directly involved in such decisions.  It is not unconstitutional for municipalities or its employees to rely on medical judgments made by those medical professionals responsible for prisoner care.  *Wooler v. Hickman Cnty., Kentucky*, No. 05-247, 2008 WL 5412826, at *18 (W.D. Ky. Dec. 30, 2008).

Moreover, there is nothing in the complaint or Wilbon's motion to support a finding that Klee was aware Wilbon was placed in a contaminated cell or that he was directly involved.  "To recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right."  *Skinner v. Unknown Grandson*, No. 05-70556, 2009 WL 909635, at *8 (E.D. Mich. Mar. 31, 2009)(citation omitted).  Furthermore, Wilbon misstates the information contained in Klee's affidavit.  When Wilbon says "Klee admitted" he was informed of Wilbon's diagnosis he refers the Court to Klee's affidavit which states:

> At no time was I aware that prisoner Wilbon was at risk from contracting MRSA, nor did I deliberately conceal facts regarding alleged contamination, as alleged in paragraphs 45-48 of Wilbon's complaint. I

18

was informed on May 13, 2011 that a prisoner was positive for MRSA, but
no isolation was needed as drainage was contained with dressing.
Decisions regarding contagious diseases are made by my health care
staff.

I was never aware that prisoner Wilbon's medical needs were being ignored. I do
not directly supervise health care staff.

The Court cannot infer from this affidavit that Klee should have known Wilbon's

cell was contaminated, that it had not been cleaned properly, or that Wilbon was

receiving substandard medical care.  "...[B]ecause the Eighth Amendment prohibits

cruel and unusual punishment, an official must have actually perceived a significant risk

to an inmate's health to have violated his constitutional right: 'An official's failure to

alleviate a significant risk that he should have perceived but did not, while no cause for

commendation, cannot under our cases be condemned as the infliction of punishment.'"

*Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014), citing *Farmer v.*

*Brennan*, 511 U.S. at 838.

It is unfortunate Wilbon became infected with MRSA while incarcerated.

However, his allegations are insufficient to establish the subjective component of a

deliberate indifference to serious medical needs claim against Klee; Klee is entitled to

qualified immunity.

### 3.   ADA

Klee says the ADA claim does not apply to him because the ADA does not allow

suits against a public official acting in his individual capacity.  The Court agrees.  A Title

II claim is properly brought against either the public entity or an official acting in his

official capacity.  *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009).

A Title II claim against Klee in his official capacity fails under the same analysis

19

the Court applied in addressing MDOC's motion to dismiss Wilbon's ADA claim.   Supra,
Section IV(B)(2).

Klee's Motion for Summary Judgment is **GRANTED**.

### C.   Renewed Motion for Temporary Restraining Order and Preliminary Injunction

On March 12, 2014, Wilbon filed a Motion for a Temporary Restraining Order and
a Preliminary Injunction.  The Court denied Wilbon's Motion but granted his Motion to
Provide Additional Information.  On April 17, 2014 Wilbon filed a request asking the
Court to reconsider issuing a temporary restraining order.  Wilbon says defendants took
his heart medication to facilitate a retaliatory transfer.  He also says they have not
provided eyeglasses and his wheelchair and leg braces were taken.

On April 23, 2014, Corizon filed a response.  Corizon attached an affidavit by Dr.
Terrence Whiteman, an interventional cardiologist and the Medical Director of Duane
Waters Hospital.

Dr. Whiteman says in February of 2014, he evaluated Wilbon to establish a
treatment plan.  Dr. Whiteman says he spent approximately seven hours reviewing
Wilbon's past medical history.  He also physically evaluated Wilbon.  Prior to his arrival
at Duane Waters Wilbon was hospitalized for an MRSA infection.  He developed Deep
Vein Trombosis ("DVT") which resolved.  According to Dr. Whiteman, Wilbon did not
suffer a stroke or heart damage.  Dr. Whiteman says Wilbon's heart is in "an excellent
state for a man his age" and he has received "extensive diagnostic testing" including a
cardiac catheterization.  Wilbon has a thirty percent blockage in one of his arteries but
this is considered hemodynamically insignificant.

Dr. Whiteman says Wilbon does not need a wheelchair, oxygen, or the medications that he was on at the time of his evaluation.  Dr. Whiteman says he prescribed a trial of Albuterol to help with Wilbon's complaints of shortness of breath. Dr. Whiteman says he told Wilbon he must begin to walk because using a wheelchair erodes his physical condition.  Walking will help improve his health and reduce his risk of developing another DVT.  Dr. Whiteman says Wilbon was provided with a walker and a physical therapy assessment.  Dr. Whiteman says he did not terminate Wilbon's leg braces.

On June 13, 2014, while the case was stayed, Wilbon wrote to the Court seeking permission to re-affirm his request for a temporary restraining order and preliminary injunction because defendants are allegedly not providing adequate medical care. Wilbon says his eyelid surgery has not been done, his blood pressure is high without proper medications, his heart rate is too fast, and walking is becoming increasingly difficult.

The factual support offered by Wilbon in support of his renewed Motion for a TRO is essentially the same as in his original motion. Therefore, the Court construes his renewed motion as a motion for reconsideration.

A court may grant a motion for reconsideration if it is demonstrated that a palpable defect misled the Court in its ruling, correction of which would result in a different disposition. E.D. Mich. LR 7.1(h)(3).

"It is an exception to the norm for the Court to grant a motion for reconsideration." *Maiberger v. City of Livonia*, 724 F. Supp. 2d 759, 780 (E.D. Mich. 2010).  "[A]bsent a significant error that changes the outcome of a ruling on a motion,

21

the Court will not provide a party with an opportunity to relitigate issues already decided." *Id.*  Palpable defects are those which are "obvious, clear, unmistakable, manifest or plain." *Mich. Dep't of Treasury v. Michalec*, 181 F. Supp. 2d 731, 734 (E.D. Mich. 2002).  A party may not introduce evidence for the first time in a motion for reconsideration if that evidence could have been presented earlier.  *Shah v. NXP Semiconductors USA, Inc.*, 507 F. App'x 483, 495 2012 WL 6013771 (6th Cir. Dec. 4, 2012) (unpublished opinion).

   Wilbon reiterates his position that the medical care he is receiving is inadequate. However, he does not contend that the Court made a significant error or there was a palpable defect by which the Court was misled.  Wilbon's Motion for Reconsideration for a Temporary Restraining Order and Preliminary Injunction is **DENIED**.

## V.   Conclusion

   (1) Michigan Department of Corrections' Motion to Dismiss is **GRANTED**; (2) Warden Klee's Motion for Summary Judgment is **GRANTED**; (3) Wilbon's renewed motion for Temporary Restraining Order and Preliminary Injunction is **DENIED**.

   **IT IS ORDERED**.

   _/s/ Victoria A. Roberts_____
   Victoria A. Roberts
   United States District Judge

Dated:  March 6, 2015

The undersigned certifies that a copy of this document was served on the attorneys of record and Louis Anthony Wilbon by electronic means or U.S. Mail on March 6, 2015.

s/Linda Vertriest
Deputy Clerk